COURT OF
APPEALS
SECOND
DISTRICT OF TEXAS
FORT WORTH
NOS.
2-00-392-CR
         2-00-393-CR

TARITA JAMES                                                                            
APPELLANT
V.
THE STATE OF TEXAS                                                                    
STATE
------------
FROM THE 235TH DISTRICT
COURT OF COOKE COUNTY
------------
OPINION
------------
I. INTRODUCTION
Appellant Tarita James was convicted and
given two life sentences by a jury for possession of cocaine over 400 grams and
possession of methamphetamine over 400 grams. Appealing both convictions, James
contends in her first two points that the trial court abused its discretion in
denying her motions to suppress evidence seized after her vehicle was stopped
because there was no reasonable suspicion for the stop. By her third point,
James contends that there was no reasonable basis for continued detention and
search after the purpose of the original stop was effectuated. By her fourth
point, James complains that the trial court erred in overruling her motion to
suppress an oral statement. In point five, she maintains that the trial court
erred in excluding co-defendant Patrice Murphy's statement against penal
interest. Point six complains that the trial court erred in allowing the State
to impeach James with evidence of a prior conviction for which she
satisfactorily completed probation. In points seven and eight, James urges that
the prosecutor's misconduct throughout the trial and in closing argument denied
her a fair trial. In James's ninth point, she argues that the trial court erred
by preventing the venire panel from answering proper voir dire questions. We
reverse and remand this case for a new trial.
II. FACTUAL AND
PROCEDURAL BACKGROUND
On March 25, 1998, at 1:40 a.m., Cooke
County Sheriff's Deputy Bobby Faglie was on patrol when he saw a green Jeep
Cherokee leave a rest stop near the 489 mile marker on northbound Interstate 35.
As the Jeep entered the highway, Faglie noticed that it failed to signal. As
Faglie watched, the Jeep crossed the center stripe between the northbound lanes,
then veered back over the yellow stripe onto the shoulder. Faglie followed the
Jeep for approximately a half mile. Believing that the driver's faculties were
impaired, he initiated a stop.
The driver, Patrice Murphy, did not have a
driver's license with her and identified herself with a Cook County, Illinois,
traffic citation. The Jeep was a rental vehicle rented to James, who was riding
as a passenger. When Faglie inquired where they were going and where they had
been, Murphy responded that they had been sleeping at the rest stop and were
still groggy, and that they were going to St. Louis, Missouri, after a two-week
stay in Dallas, visiting James's aunt.
Officer Faglie had Murphy exit the Jeep
and asked her if the vehicle had insurance. When Murphy responded that she did
not have insurance for the vehicle, Faglie went to the passenger side of the
vehicle and made the same inquiry to James. She handed Faglie the rental
agreement, issued in James's name from St. Louis International Airport, which
showed the vehicle was due back two days before, on March 23, 1998. James told
Faglie that they were in Dallas for two days and could not find her aunt's
house.
Faglie determined that Murphy was not
intoxicated and issued a warning citation for failure to indicate lane change
and failure to maintain a single lane of traffic. He gave the warning citation
to Murphy and then asked James for consent to search the vehicle; she consented
both verbally and in writing.
Upon searching the vehicle, Faglie first
found two purses on the center console of the Jeep. In the purses, he found a
combined total of $6,636, and in James's purse he found five small bags of
cocaine. Faglie handcuffed James and Murphy and placed them under arrest, while
his partner read James and Murphy their Miranda rights.
When Faglie and his partner opened the hatchback of the Jeep, they found
several shopping bags and nine suitcases, seven of which contained eighty-two
insulation wrapped packages totaling over four hundred pounds of ninety-one
percent pure cocaine and a forty-eight percent mixture of amphetamine.(1)
Murphy and James were indicted for the offenses of possession of cocaine over
400 grams and possession of amphetamines over 400 grams. James was tried
separately and was found guilty and sentenced to two life sentences by a jury.(2)
III. DISCUSSION

 A.  Motions to Suppress

In her first two points, James contends that the trial court abused its
discretion by denying her motion to suppress evidence seized from the vehicle
because the initial stop was improperly premised upon Murphy entering the
highway without signaling and failing to maintain a single lane without evidence
that the movement was unsafe, and was thus an illegal traffic stop. In her third
point, James argues that the trial court abused its discretion in failing to
grant her motion to suppress because the continued detention after the warning
citation was issued was unreasonable. In James's fourth point, she argues that
the trial court should have granted the motion to suppress an unrecorded oral
statement.

 
 1. Preservation of Error
 

The State first argues that points one through three were not preserved for
appellate review because the trial court did not rule on James's October 27,
1999 motion to suppress and the defense did not request a ruling. See
Tex. R. App. P. 33.1(a)(2)(A), (B). We disagree that the trial court did not
rule on the motion to suppress as to the reasonableness of the stop. At the
close of the hearing on the motions to suppress, the trial court stated:

 I think he said he stopped them because
 he thought they might be DWI. After he determined that they weren't DWI, and
 he determined they did have insurance for the vehicle, I can understand that
 if he thought they had been asleep, he could also take pity on the minor
 traffic infractions, and give them a warning ticket. But I think he
 reasonably stopped them as to the way they were driving. They could have been
 DWI. And that's not a minor infraction. [Emphasis supplied].

The record reflects, however, that the
trial court did not expressly rule on the legality of the continued detention
because it wanted the parties to brief those issues. (3)
For James to demonstrate that error was preserved for appellate review, the
record must show: (1) that the complaint made was by a timely filed motion
stating grounds sufficient to provide notice to the trial court and, (2) that
the trial court ruled on the motion either expressly or implicitly. Tex. R. App.
P. 33.1(a)(1)(A), (2)(A).
Here, the pretrial suppression motion and
hearing provided the trial court ample notice of the nature of James's
complaints. While the trial court decided that it needed more time to rule on
the matter, it never explicitly ruled on the motion. At trial, however, the
fruits of the continued detention were presented by the State. Every time the
State raised this evidence, James's counsel consistently objected on the same
grounds he raised during the suppression hearing. The trial court overruled his
objections.
We hold that the trial court implicitly
overruled the motion to suppress, as exhibited by its actions during the
guilt/innocence phase of trial. Gutierrez v. State, 36 S.W.3d 509, 511
(Tex. Crim. App. 2001) (vacating and remanding to intermediate appellate court
to consider whether the trial court's ruling on a motion to suppress was
implicit). While an appellate court will generally find that a trial court made
an implicit ruling on an objection when the objection was brought to the trial
court's attention, it will only do so when "the trial court's subsequent
action clearly addressed the complaint." State v. Kelly, 20
S.W.3d 147, 153, n.3 (Tex. App.--Texarkana 2000, no pet.) (considering whether
trial court's ruling was implicit on a motion to suppress not explicitly ruled
on). We hold that error was properly preserved as to the seizure of the
contraband. We turn to the merits of James's first three points.

 
 2. Standard of Review
 

We review a trial court's denial of a
motion to suppress for abuse of discretion. Carmouche v. State, 10
S.W.3d 323, 327 (Tex. Crim. App. 2000); Oles v. State, 993 S.W.2d 103,
106 (Tex. Crim. App. 1999). There is an abuse of discretion when the ruling was
so clearly wrong as to be outside that zone within which reasonable persons
might disagree. Cantu v. State, 842 S.W.2d 667, 682 (Tex. Crim. App.
1992), cert. denied, 509 S.W.2d 926 (1993). We afford almost total
deference to a trial court's determination of the historical facts that the
record supports, especially when the trial court's fact findings are based upon
an evaluation of credibility and demeanor. State v. Ross, 32 S.W.3d
853, 856 (Tex. Crim. App. 2000). We afford the same amount of deference to the
trial court's rulings on mixed questions of law and fact, if the resolution of
those questions turns on an evaluation of credibility and demeanor. Carmouche,
10 S.W.3d at 327; Guzman v. State, 955 S.W.2d 85, 88-89 (Tex. Crim.
App. 1997). We review de novo the trial court's application of law to
those facts in the determination of reasonable suspicion and probable cause.
Carmouche, 10 S.W.3d at 327; Guzman, 955 S.W.2d at 88-89.
When the trial court does not make
explicit findings of historical facts, we view the evidence in the light most
favorable to the trial court's ruling and assume that the trial court made
implicit findings of fact supporting its ruling, if those findings are supported
by the record. Carmouche, 10 S.W.3d at 327-28. In determining whether a
trial court's decision is supported by the record, we generally consider only
evidence adduced at the suppression hearing because the ruling was based on it
rather than evidence introduced later. Rachal v. State, 917 S.W.2d 799,
809 (Tex. Crim. App.), cert. denied, 519 U.S. 1043 (1996).
This general rule is inapplicable where
the suppression issue has been consensually relitigated by the parties during
the trial on the merits. Id. Where the State raises the issue at trial,
either without objection or with subsequent participation in the inquiry by the
defense, the defendant has made an election to re-open the evidence, and
consideration of the relevant trial testimony is appropriate in our review. Id.
Because James consistently objected at trial to the evidence at issue during the
previous suppression hearing, we hold that the parties have not consensually
relitigated the issue; therefore, we will limit the scope of our review of these
points to the evidence presented during the suppression hearing. McQuarters
v. State, 58 S.W.3d 250, 255 (Tex. App.--Fort Worth 2001, pet. ref'd).

 
 3. Applicable Law
 

The Fourth Amendment to the United States
Constitution provides, in part, that "the right of the people to be secure
in their persons, houses, papers, and effects, against unreasonable searches and
seizures, shall not be violated." U.S. Const. amend. IV. Warrantless
searches are per se unreasonable unless they fall into a recognized exception. Harris
v. United States, 331 U.S. 145, 67 S. Ct. 1098 (1947). The State bears the
burden of establishing an exception to the warrant requirement. Russell v.
State, 717 S.W.2d 7, 9-10 (Tex. Crim. App. 1986). Consistent with the
principles set forth in Terry v. Ohio, a police officer may stop and
briefly detain a person for investigative purposes if the officer has reasonable
suspicion supported by articulable facts that criminal activity may be afoot,
even if the officer lacks evidence rising to the level of "probable
cause." 392 U.S. 1, 29, 88 S. Ct. 1868, 1884 (1968); Davis v. State,
947 S.W.2d 240, 244 (Tex. Crim. App. 1997).
Reasonable suspicion exists if the officer
has specific articulable facts that, when combined with rational inferences from
those facts, would lead him to reasonably suspect that a particular person has
engaged in or is, or soon will be, engaging in illegal conduct. Garcia v.
State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). Reasonable suspicion is
determined by considering the "totality of the circumstances." Woods
v. State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997).

 
 4. Was the stop based on reasonable suspicion?
 

James argues that the initial stop was not justified because the evidence
failed to show that the traffic violations Officer Faglie claimed to have seen
were illegal. Specifically, James's first point argues that it is not illegal to
enter onto a highway without signaling.(4)
James's second point contends that crossing the middle lane was not illegal
because there was no evidence that it caused danger to others.(5)
James reasons that, because there was no justification for the traffic stop, the
consent to search was tainted as fruit of the illegal stop and the trial court
should have suppressed the evidence seized from the Jeep.
James cites Trahan v. State, in
which the defendant gave consent for a search of his vehicle after a stop for
failure to give a turn signal when exiting a freeway. 16 S.W.3d 146 (Tex.
App.--Beaumont 2000, no pet.). The Beaumont Court of Appeals held that exiting a
freeway without a turn signal was not a statutory violation because there was no
evidence that the driver "turned" or changed lanes in order to make
the exit as a prerequisite for the statutory requirement of giving a turn
signal, nor was there evidence in the case that exiting the freeway under the
circumstances was unsafe. Id. at 147. Therefore, the court
held, there was no basis for the stop and, as the consent to the search was a
fruit of the illegal stop, the evidence obtained in the search should have been
suppressed. Id. James argues that Murphy, the driver of the Jeep,
likewise did not make a "turn" upon entering the freeway, and that the
stop in this case was thus illegal to the extent that it was based upon any
purported traffic violation.
To support her claim that the stop could
not properly have been based on Murphy's swerving over the center line and then
onto the shoulder, James points out that the vehicle only traveled halfway over
the center line and an unknown distance onto the shoulder and there was no
evidence of other vehicles in the area so as to render Murphy's driving
"unsafe." James relies upon State v. Cerny, in which the
Corpus Christi Court of Appeals upheld the grant of a motion to suppress where
the state trooper's report showed he stopped the defendant for failure to
maintain a single lane although he testified the defendant only "drove to
the center lane divider" three or four times and there was no evidence that
the movements were made "unsafely." 28 S.W.3d 796, 799 (Tex.
App.--Corpus Christi 2000, no pet.).
Trahan, Cerny, and the
cases upon which Cerny relied, are distinguishable.(6)
In each case, the officer who made the stop specifically testified that the stop
was made based only upon observation of a traffic offense. In contrast, Officer
Faglie testified that, based on his observations, he believed that the driver's
"driving faculties" might be impaired, as by intoxication or some
other reason. There is no requirement that a traffic regulation has been or is
about to be violated in order for an officer to have reasonable suspicion
sufficient to justify a stop of a vehicle. Cook v. State, 63 S.W.3d
924, 929 (Tex. App.--Houston [14th Dist.] 2002, pet. ref'd). An
officer may be justified in stopping a driver based upon a reasonable suspicion
of driving while intoxicated. Id.; Gajewski v. State, 944
S.W.2d 450, 453 (Tex. App.--Houston [14th Dist.] 1997, no pet.); see
also McQuarters, 58 S.W.3d at 255 (holding stop justified based on
reasonable suspicion that defendant, who crossed the left lane stripe twice, was
intoxicated). Erratic or unsafe driving may furnish a sufficient basis for a
reasonable suspicion that the driver is intoxicated even absent evidence of
violation of a specific traffic law. Cook, 63 S.W.3d at 929; Fox v.
State, 900 S.W.2d 345, 347 (Tex. App.--Fort Worth 1995) (holding driver's
conduct sufficient to justify stop based upon reasonable suspicion that
something out of the ordinary was occurring even though no single act was
illegal), pet. dism'd, improvidently granted, 930 S.W.2d 607 (Tex. Crim.
App. 1996). We hold that Officer Faglie's testimony warranted the trial court's
ruling that Faglie had reasonable suspicion that Murphy was driving while
intoxicated, so that the initial stop and temporary detention were lawful. We
overrule James's first and second points.

 
 5. Was the continued detention reasonable?
 

In James's third point, she argues
that the motion to suppress the evidence seized from the vehicle should have
been granted because, after Officer Faglie issued the warning citation, there
was no reasonable basis for continued detention and, for that additional reason,
the subsequent search was not justified. We disagree that Officer Faglie's
continued detention and search were invalid in this case.
An investigative detention may last
no longer than is necessary to effectuate the purpose of the stop. Florida
v. Royer, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325 (1983); Davis,
947 S.W.2d at 243. Once the purpose has been satisfied, the stop may not be used
for an unrelated "fishing expedition." Davis, 947 S.W.2d at
243 (quoting Ohio v. Robinette, 519 U.S. 33, 41, 117 S. Ct. 417, 422
(1996) (Ginsburg, J., concurring)); Simpson v. State, 29 S.W.3d 324,
326 (Tex. App.--Houston [14th Dist.] 2000, pet ref'd). The propriety
of the stop's duration is judged by assessing whether the police diligently
pursued a means of investigation that was likely to dispel or confirm their
suspicions quickly. Davis, 947 S.W.2d at 245; Perez v. State,
818 S.W.2d 512, 517 (Tex. App.--Houston [1st Dist.] 1991, no writ).
James relies upon Davis,
in which the court of criminal appeals held that there was no justification for
the appellant's continued detention after the reason for the initial stop was
effectuated where, after the officers determined that the appellant was merely
tired, rather than intoxicated, they continued to detain him merely on the
suspicion that he did not look like he was on a business trip. 947 S.W.2d at
245. A canine unit was called and the narcotics dog made a positive
alert at the vehicle's trunk, in which the officers found drugs. Id. at
241. The court of criminal appeals held that the motion to suppress should have
been granted because the facts recited by the officers did not constitute
reasonable suspicion for the continued detention of the appellant or his
vehicle. Id. at 246.
Davis is distinguishable
in that the appellant in that case twice refused consent to search his vehicle. Id.
at 241, and n.1. In contrast, James gave both written and verbal consent to
search the Jeep rented in her name. James does not contest voluntariness of the
consent, nor does she contend that she was not apprised that the initial
detention had ended. Rather, she argues that, under Davis, the officer
must have discovered new or additional facts creating a reasonable basis for
seeking consent to the continued detention and search. Davis does not
stand for that proposition.
In Ohio v. Robinette, the
United States Supreme Court held that a continued detention and search of a
vehicle were reasonable when consent was given, even though no circumstances
were noted that would have constituted reasonable suspicion of any further
criminal activity. 519 U.S. at 39-40, 117 S. Ct. at 420-21. Davis and Robinette,
when read together, mean that an officer may request consent to search a vehicle
after a traffic stop and, if such consent is refused, the officer may
not detain the occupants or vehicle further unless reasonable suspicion of some
additional criminal activity exists. Simpson, 29 S.W.3d at 327.
It is not unreasonable per se
to request consent after completion of a traffic stop. Leach v. State,
35 S.W.3d 232, 235 (Tex. App.--Austin 2000, no pet.) (holding reasonable
suspicion to continue detention and search not required under Robinette
for valid consent to search following resolution of original reason for stop); Simpson,
29 S.W.3d at 327; see also Spight v. State, 76 S.W.3d 761, 768
(Tex. App.--Houston [1st Dist.] 2002, no pet.) (holding denial of
motion to suppress based on "prolonged detention" not abuse of
discretion where appellant gave consent with no indication from patrolman that
compliance was required).
A police officer may approach a
citizen without probable cause or even reasonable suspicion to ask questions or
obtain consent to search. Leach, 35 S.W.3d at 235 (citing Royer,
460 U.S. at 497-98, 103 S. Ct. at 1324). Likewise, reasonable suspicion is not
required for a police officer to request consent to search an automobile after
the reason for an initial stop is concluded as long as a message is not conveyed
that compliance is required. Leach, 35 S.W.2d at 235; Simpson, 29
S.W.3d at 327; see also Spight, 76 S.W.3d at 767 (noting
constitutional proscriptions against warrantless searches and seizures do not
come into play when a person gives voluntary consent); State v. Daly,
35 S.W.3d 237, 241 (Tex. App.--Austin 2000, no pet.) (holding that continued
questioning and search after reason for initial traffic stop was concluded was
invalid absent clear and convincing evidence that defendant voluntarily remained
at scene).
Officer Faglie had both written and
verbal consent from James, in whose name the vehicle was rented. In light of the
totality of the circumstances, and absent a contention that consent was
involuntary or that a reasonable person would not have felt free to leave, we
conclude that the subsequent search and seizure of the contraband were not
illegal. We overrule James's third point.

 
 6. Appellant's Oral Statement
 

James's fourth point complains of the denial of her motion to suppress the
oral statement she made to Officer Faglie during his search of the Jeep. James's
counsel moved to suppress her verbal response to an inquiry by Faglie based on
article 38.22, § 3 of the Texas Code of Criminal Procedure, which provides that
an oral statement of an accused is not admissible unless an electronic recording
is made, including a videotape or other visual recording. Tex. Code Crim. Proc.
Ann. art. 38.22, § 3 (Vernon Supp. 2003). Faglie acknowledged no recording was
made of the statement, nor was it reduced to writing. Faglie testified at the
hearing on the motion to suppress that, after he obtained consent from James, he
first inspected the contents of the women's purses found on the center console.
In addition to discovering cash totaling over $6,000 in the purses, Faglie found
five small packages of a white substance in James's purse, which was later
identified as cocaine. Faglie placed both women under arrest at that time and
read James her Miranda rights. He testified that he then asked James if
there was any other contraband in the vehicle. According to Faglie, James
responded that "there was no more contraband in the vehicle and what was
found was for her personal use; that she was an addict."
The State introduced the statement during its case-in-chief, through
the testimony of Officer Faglie. The State now concedes on appeal that the trial
court erred in overruling James's motion to suppress the oral statement, but it
argues that the error was harmless. First the State points out that James's
statement that there was no other contraband in the Jeep actually helped her
because it tended to show lack of knowledge, an essential element of the offense
of possession. Second, the State argues that the error was rendered harmless
when James subsequently took the stand in the guilt/innocence phase of the
trial, because the statement then became admissible for impeachment purposes.
James testified at trial to her version of the events, that she and
Murphy were friends, and that she trusted Murphy. James admitted the purpose of
the trip was not to visit her aunt, as they had told Officer Faglie. Instead,
she said, she agreed to accompany Murphy to Dallas on March 21, 2000, to pick up
a BMW car that was a gift to Murphy from one of Murphy's many male friends.
According to James, they drove to St. Louis, where James used her driver's
license and credit card to rent the Jeep in her name because Murphy had no
license. They stayed at the Red Roof Inn in Dallas, where James registered in
her own name, again because Murphy had no identification. A man delivered the
BMW to Murphy, but they were unable to get its title transferred because of
title problems.
Murphy was to have driven James back to Chicago on Monday because she
needed to get back to work, James said, but they stayed over because of the car
title problems. James also testified that Murphy changed her mind about
returning, so James made reservations by phone to fly back to Chicago, but did
not remember the airline and did not charge tickets to her credit card. James
testified she was angry because Murphy disappeared on Monday, March 24, and did
not return in time to take James to the airport. When she finally returned,
Murphy offered to drive her back to Chicago that night.
James testified that she did not assist in loading the luggage, but saw
a man from the office at the Red Roof Inn walking toward the car to help Murphy
load luggage into the Jeep. She was tired and fell asleep in the passenger seat.
She did not see the bags and did not know how many bags were in the back of the
vehicle. When the officers removed the suitcases during the search, she began
throwing up from the shock. She denied any knowledge that drugs were in the
bags. On cross-examination by the State, James denied knowing what
cocaine smelled like or what it would do to a person and denied being an addict.
Generally, oral statements by an accused as the result of
a custodial interrogation are not admissible against the accused. Tex. Code Crim.
Proc. art. 38.22, § 3(a). (7)
Article 38.22 is strictly construed. Leal v. State,
82 S.W.3d 84, 89 (Tex. App.--San Antonio 2002, pet. ref'd). However, there are
several exceptions to the rule. As applicable here, an unrecorded
oral statement of a defendant is admissible on rebuttal by the State to impeach
the defendant's trial testimony. Tex. Code Crim. Proc. Ann. art. 38.22, § 5
(Vernon 1979); Lykins v. State, 784 S.W.2d 32, 35-36 (Tex.
Crim. App. 1989); McCoin v. State, 56 S.W.3d 609, 617
(Tex. App.--Texarkana 2001, no pet.) (holding admission of oral statement by
State on rebuttal to impeach defendant's trial testimony not error).
(8)
Although the oral statement of James that the cocaine in her purse was
hers and that she was an addict was prematurely admitted in error, we agree with
the State that the error was harmless. Her subsequent testimony denying that she
knew what cocaine could do or that she was an addict rendered the statement
admissible for impeachment purposes. Evidence prematurely admitted in error may
become admissible or be rendered harmless by subsequent evidence. See,
e.g., Jaramillo v. State, 817 S.W.2d 842, 845 (Tex. App.--Fort Worth 1991,
writ ref'd) (holding error in admitting extraneous acts to shore up child
victim's testimony rendered harmless when credibility of victim was subsequently
put in question); see also Siqueiros v. State, 685 S.W.2d
68, 72 (Tex. Crim. App. 1985) (holding evidence of extraneous offense improperly
admitted in state's case-in-chief rendered harmless when evidence subsequently
became relevant on issue of identity); Rubio v. State, 607
S.W.2d 498, 502 (Tex. Crim. App. 1980); Poole v. State,
974 S.W.2d 892, 898 (Tex. App.--Austin 1998, pet. ref'd) (holding premature
admission of extraneous offenses rendered harmless by subsequent testimony of
defendant denying offense). We overrule James's fourth point.

 B. Murphy's Statement Against Penal Interest

By James's fifth point, she complains that the trial court abused its
discretion in excluding evidence of a transcribed statement made by Patrice
Murphy to Detective Ted Mordecai, a detective with the Cooke County Sheriff's
Office, in the course of his investigation. Detective Mordecai testified for the
State that he met the officers with the vehicle at the Sheriff's Office to
assist in the investigation. On cross-examination, counsel for James questioned
Detective Mordecai about his interviews with James and Murphy.
Specifically, James's counsel sought to question Detective Mordecai
about a statement made by Murphy, in which Murphy admitted to Mordecai that she
was paid $2,000 to deliver the contraband, that she took full responsibility for
the situation, that she had only "used" James to get the Jeep, and
that James knew nothing about the drugs. Sustaining the State's objection, the
trial court excluded Murphy's statement as inadmissible hearsay.
On appeal, as in the trial court, James contends that the statement was
admissible under Texas rule of evidence 803(24) as a statement against Murphy's
penal interest.(9) Tex. R. Evid. 803(24). That
rule provides an exception to the hearsay rule, as follows:

 Statement Against Interest. A statement which was at the time of its
 making so far contrary to the declarant's pecuniary or proprietary interest,
 or so far tended to subject [him] to civil or criminal liability, or to render
 invalid a claim by [him] against another, or to make [him] an object of
 hatred, ridicule, or disgrace, that a reasonable [man] in [his] position would
 not have made the statement unless believing it to be true. A statement
 tending to expose the declarant to criminal liability is not admissible unless
 corroborating circumstances clearly indicate the trustworthiness of the
 statement.

Tex. R. Evid. 803(24).
We review the trial court's decision to admit or exclude evidence of a
statement against penal interest under an abuse of discretion standard. Cunningham
v. State, 877 S.W.2d 310, 313 (Tex. Crim. App. 1994) (citing
United States v. Satterfield, 572 F.2d 687, 690 (9th
Cir.), cert. denied, 439 U.S. 840 (1978));
Fonseca v. State, 908 S.W.2d 519, 521 (Tex. App.--San Antonio 1995, no
pet.). The trial court's ruling will not be reversed as
long as it is within the "zone of reasonable disagreement." Salazar
v. State, 38 S.W.3d 141, 151 (Tex. Crim. App.), cert.
denied, 122 S. Ct. 127, 128 (2001); Couchman v. State,
3 S.W.3d 155, 158 (Tex. App.--Fort Worth 1999, pet. ref'd).
Whether a statement is admissible in accordance with Rule 803(24)
requires a two-step inquiry. Bingham v. State, 987 S.W.2d
54, 57 (Tex. Crim. App. 1999). First, the trial court must determine whether the
statement tends to expose the declarant to criminal liability. Id.
Second, corroborating evidence must be shown that is sufficiently convincing to
"clearly indicate the trustworthiness of the statement." Id.;
see also Dewberry v. State, 4 S.W.3d 735, 751 (Tex. Crim. App. 1999), cert.
denied, 529 U.S. 1131 (2000); Davis v. State, 872
S.W.2d 743, 749 (Tex. Crim. App. 1994). The burden is on the party seeking
admission of the statement to make this showing, and "the test is not an
easy one." Davis, 872 S.W.2d at 747.
Whether the burden has been satisfied is entrusted to the sound discretion of
the trial court. Cunningham, 877 S.W.2d at 313.
The proffered statement of Murphy to Detective Mordecai, taking full
responsibility under the circumstances, obviously subjected her to criminal
liability. The remaining issue is whether the statement was sufficiently
corroborated to clearly indicate trustworthiness. Davis,
872 S.W.2d at 748. In determining whether circumstances are sufficiently
corroborative, the focus is on verifying to the greatest extent possible the
trustworthiness of the statement to avoid the danger of fabrication. Id.
There is no determinative test for the corroboration requirement
because a variety of factors may be considered in evaluating corroborating
circumstances. Cunningham, 877 S.W.2d at 312; Davis,
872 S.W.2d at 749. Factors may include whether guilt of the declarant is
inconsistent with that of the defendant, whether the declarant is so situated
that she might have committed the crime, the timing of the declaration, the
spontaneity of the statement, the relationship between the declarant and the
party to whom the statement was made, and the existence of independent
corroborative facts. Dewberry, 4 S.W.3d at 751; Cunningham,
877 S.W.2d at 313; Davis, 872 S.W.2d at 849. Further, the
trial court may consider evidence that undermines the reliability of the
statement as well as evidence corroborating its trustworthiness. Cunningham,
877 S.W.2d at 312. The trial court may also consider evidence of the veracity of
the declarant. Id. (10)
Murphy's guilt is not inconsistent with James's guilt. Both were riding
in the Jeep in which the contraband was being transported, they had traveled
together to Dallas, they had shared a room, and they admittedly were together
for most of the trip. The evidence is undisputed that Murphy was driving when
they were stopped; although the Jeep was rented in James's name,
and they had equal access to the suitcases containing the drugs.
Therefore, we believe that the first factor weighs in favor of the
trustworthiness of Murphy's self-inculpatory statement. The second factor also
weighs in favor of trustworthiness, since the evidence was undisputed that
Murphy was driving, she was in charge of loading the suitcases, and she was thus
clearly situated to be guilty of the crime of possession of the contraband.
The exact timing of the statement is not shown by the record, although
it appears that Murphy made the statement to Detective Mordecai at some point
after the women were booked into the jail and after he had interviewed them one
or more times. The record reflects that Murphy initiated the interview with
Detective Mordecai, in which she made the self-inculpatory statement
voluntarily, taking full responsibility for the drugs. Therefore,
we find that the third factor weighs in favor of trustworthiness.
The fourth factor of "spontaneity" weighs neither in favor of
nor against trustworthiness. There is no evidence that Murphy was under the
stress or dominating influence of a startling event but, rather, she had been in
jail for at least a couple of days. The fifth factor weighs in favor of
trustworthiness because the relationship between the declarant and the person to
whom the statement was given was that of a suspect in custody admitting guilt to
an investigating officer. See Cunningham v. State, 846
S.W.2d 147, 150 (Tex. App.--Austin 1993) (indicating that sufficient
corroborating circumstances might include "proof that the statement was
against the declarant's interest to an unusual or devastating degree"), aff'd,
877 S.W.2d 310 (Tex. Crim. App. 1994).
We find independent evidence corroborating both Murphy's inculpatory
statements and her statements exonerating James. Murphy's guilt is supported by
the evidence that she drove the Jeep carrying the contraband and that she had
close to $4,000 in cash in her purse. Her statement that James had no knowledge
of the drugs is corroborated by James, herself, in consistently denying any
knowledge of the drugs to Officer Faglie and Detective Mordecai during the
investigation, as well as in her testimony at trial. See
Cunningham, 877 S.W.2d at 313, n.2 (disagreeing with lower court that
consistent hearsay or testimony from the defendant is not a valid consideration
in assessing trustworthiness). Moreover, the evidence was undisputed that James
rented the Jeep in her own name and with her credit card because Murphy had no
license, corroborating Murphy's statement that she "used" James to get
the vehicle.
Evidence tending to undermine the reliability of Murphy's statement as
well as the testimony of James as to lack of knowledge of the drugs includes
Officer Faglie's testimony that he saw the suitcases in plain view in the back
of the Jeep when he shined his flashlight into the vehicle. The suitcases were
so heavy that they had to be placed on a cart and wheeled into the station. The
manager of the Red Roof Inn where the women had stayed in Dallas testified that
he had no bellmen to help load luggage. DEA agent York, who assisted in the
investigation and interviewed both women, testified that James admitted she
accompanied Murphy to a house at 804 Haverford in a suburb of Dallas, where she
was paid to help count stacks of money. James had over $2,000 in her purse along
with five small baggies of cocaine. (11)
James testified that she and Murphy had been friends for several years.
Detective Mordecai testified that Murphy told him that she felt sorry for James
because she "had so many problems" and wanted to help get her
released. This evidence indicates a possible friendship motive for Murphy's
statement, but this is a matter to be tested by a jury. Davis,
872 S.W.2d at 749. There is no evidence that Murphy attempted to gain an
advantage, shift blame, or bargain for leniency for herself.
Under similar circumstances, courts have held that it was error to
exclude statements against penal interest tending to exonerate a defendant. See,
e.g., Burks v. State, 876 S.W.2d 877, 905 (Tex. Crim. App. 1994);
Davis, 872 S.W.2d at 749 (holding factors that might undermine reliability
did not outweigh evidence directly corroborating statement);
Fonseca, 908 S.W.2d at 523 (holding trial court abused its discretion in
excluding statements telling consistent story tending to exonerate defendant); see
also State v. Blanco, 953 S.W.2d 799, 803 (Tex. App.--Corpus Christi 1997,
pet. ref'd) (finding Brady violation by state in failing
to turn over statement of third party that he, not defendant, was perpetrator,
which was "strong evidence" for defendant).
(12) Considering the Cunningham and
Davis factors, we believe that the corroborating evidence,
even in light of evidence tending to undermine the reliability of Murphy's
statement, sufficiently convincing to clearly indicate trustworthiness of
Murphy's statement. Her statement that she merely "used" James to get
the vehicle and that James had no knowledge of the drugs is sufficiently
corroborated that, if believed, it could create a reasonable doubt as to James's
guilt. But whether Murphy's statement is to be believed is for the jury. We hold
that the trial court's ruling was outside the zone of reasonable disagreement
and that there was an abuse of discretion in excluding Murphy's statement.
Where erroneous exclusion of evidence is the result of misapplication
of the rules of evidence and its admission is not claimed to be required by the
United States or state constitutions, we analyze harm under rule of evidence
103(a), which provides that error may not be predicated upon a ruling that
admits or excludes evidence unless a "substantial right" of the party
is affected. Tex. R. Evid. 103(a); Potier v. State, 68
S.W.3d 657, 666 (Tex. Crim. App. 2002). The standard is the same as that under
rule 44.2(b). Tex. R. App. P. 44.2(b); Potier, 68 S.W.2d
at 666. A substantial right is affected when the error had
a substantial and injurious effect or influence on the jury's verdict. Johnson
v. State, 43 S.W.3d 1, 3-4 (Tex. Crim. App. 2001).
In assessing the likelihood that the error adversely affected
the jury's decision, we consider everything in the record, including all
evidence admitted for the jury's consideration, the nature of the evidence
supporting the verdict, the character of the alleged error, and how it might
have been considered in connection with the other evidence. Morales
v. State, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). We may also consider
the State's theory of the case, any defensive theories, closing arguments, and
voir dire. Id.
The issue of James's knowledge of the presence of the drugs was the
critical issue in the case. She was charged with unlawful possession, defined by
the court as "knowingly or intentionally possess[ing] a controlled
substance, with 'possession' defined as actual care, custody, control, or
management." She was charged both as a principal and as a party, each of
which required proof of intentional or knowing possession of the cocaine and
amphetamine. Guilt was dependent on the jury's determination of James's
credibility, as to which the jury had only her uncorroborated testimony absent
Murphy's statement to Detective Mordecai. We hold that the exclusion of the
statement prevented James from adequately supporting her defense and that the
ruling substantially and injuriously affected the jury's verdict. We sustain
James's fifth point and hold that the judgment and conviction must be reversed
and remanded for new trial.

 C. Use of Prior Conviction for Impeachment

James's sixth point contends that the trial court abused its discretion in
admitting evidence of her prior conviction in 1991 for possession of cocaine
with intent to deliver, for which James satisfactorily completed probation.
Because this matter is likely to arise in a new trial, we will address
it. Evidence of the conviction was elicited on cross-examination of James by the
State during the guilt/innocence phase of the trial. The trial court overruled
James's counsel's objections to the conviction as violating rule of evidence 609
and the Texas and United States Constitutions. Counsel for James then asked for
a limiting instruction that the evidence be considered only for impeachment,
which the trial court gave to the jury. (13) The
trial court sustained defense objections to the State's attempt to elicit
details of the offense. The trial court refused the State's further request
during the testimony, as well as in the charge, to broaden the use of the
conviction to show intent, knowledge, scheme, or plan.
While the State again concedes error, it argues that James "opened
the door" to use her prior conviction for impeachment purposes not only by
her testimony, but also by putting on witnesses to her good character. Barbara
Reich, a thirty-year teacher from Chicago, testified that James was her "para-professional"
and held a position of trust caring for children and handling lunch money. Reich
testified that she respected and admired James because she was achieving her
goals and "had an intent to move on and change her life and become a solid
citizen." Donna Jackson, another teacher from the school where James was
employed, testified that James assisted her with small children and that girls
in the highschool would come to James for counseling. Jackson stated she
believed in James and came to Texas to let people know she was "honest and
truthful" and a good person.
James contends that admitting evidence of her prior conviction for
impeachment purposes over her objection was harmful error in violation of rule
of evidence 609(c)(2), which provides in pertinent part:

 RULE 609. IMPEACHMENT BY EVIDENCE OF CONVICTION
 OF CRIME
 . . . .
 (c) Effect of Pardon, Annulment, or Certificate of
 Rehabilitation. Evidence of a conviction is not admissible under this
 rule if:
 . . . .
 
 (2) Probation has been satisfactorily completed for the crime for
 which the person was convicted, and that person has not been convicted of a
 subsequent crime which was classified as a felony or involved moral
 turpitude, regardless of punishment.
 

Tex. R. Evid. 609(c)(2). Simply stated, rule 609(a) allows use of
evidence of a conviction for impeachment purposes under certain circumstances,
but the conviction is not admissible if the defendant or witness satisfactorily
completed probation and has not since been convicted of a felony or crime of
moral turpitude. Tex. R. Evid. 609(a), (c)(2); Ex
parte Menchaca, 854 S.W.2d 128, 131 (Tex. 1993). The evidence of the
conviction introduced by the State established not only the charges against
James, but it also confirmed on its face that she satisfactorily completed
probation in 1994.
Assuming, without deciding, that a defendant may open the door to
impeachment by evidence of a conviction for which probation has been completed,
despite the specific prohibition in rule 609(c)(2) against use of such evidence
for impeachment purposes, we are not persuaded by the State's argument that
James opened the door to evidence of her prior conviction by her testimony or
that of her witnesses.
A defendant opens the door to an otherwise irrelevant criminal history
when he or she creates a "false impression" of law-abiding behavior,
allowing the state to expose the falsehood. Hammett v. State,
713 S.W.2d 102, 105 (Tex. Crim. App. 1986); Lopez v. State,
990 S.W.2d 770, 777 (Tex. App.--Austin 1999, no pet.) (citing Delk
v. State, 855 S.W.2d 700, 704 (Tex. Crim. App.), cert.
denied, 510 U.S. 982(1993)); see also Prescott v. State,
744 S.W.2d 128, 131 (Tex. Crim. App. 1988). However, the "false
impression" exception is given a narrow construction by the case law. Lopez,
990 S.W.2d at 778. In order to open the door to use of prior crimes for
impeachment, the witness must do more than simply imply that he abides by the
law; he must in some way convey the impression that he has never committed a
crime. Id. at 777; Lewis v. State,
933 S.W.2d 172, 179 (Tex. App.--Corpus Christi 1996, pet. ref'd).
The cases holding that a defendant opened the door to evidence of prior
convictions have involved false testimony presented by the defendant on the
stand of past law-abiding behavior or direct denials of any prior conviction or
trouble with the law. See, e.g., Scott v. State, 57 S.W.3d
476, 486 (Tex. App.--Waco 2001, pet. ref'd) ("Under Rule 609, when a
witness takes the stand and leaves the false impression of his 'trouble' with
the police, it is legitimate cross-examination to prove that the witness has
been 'in trouble' on other occasions.") (citing Ramirez v.
State, 802 S.W.2d 674, 676 (Tex. Crim. App. 1990)); Metts
v. State, 22 S.W.3d 544, 549 (Tex. App.--Fort Worth 2000, no pet.) (holding
defendant opened door to evidence of prior arrest by testimony that he had
"never been involved in anything 'remotely like this'"); Hernandez
v. State, 897 S.W.2d 488, 495 (Tex. App.--Tyler 1995, no writ) (impeachment
regarding pending charges allowed to rebut testimony that defendant had not had
"problems" with the law or been in "trouble").
We find no similar testimony that James or her character witnesses
directly or indirectly presented a false picture that James had no prior charges
or convictions. James testified as to her job at the school in Chicago and her
version of the events and activities during the trip to Dallas and denied
knowledge of the drugs in question, but she never denied or implied an absence
of prior trouble with the law or prior charges or convictions, nor did her
character witnesses do so. One of those witnesses even testified that James
"had an intent to change her life" and to "move on" and
"become a solid citizen," implying that James's past may not have been
spotless. While James denied knowledge of the smell of cocaine or what it would
do to her, that testimony went to the issue of prior usage or addiction. We
disagree that James opened the door to the evidence of her prior conviction for
impeachment purposes.
As discussed above, we review the trial court's decision to admit or
exclude evidence under an abuse of discretion standard. Coffin
v. State, 885 S.W.2d 140, 149 (Tex. Crim. App. 1994); Moon
v. State, 44 S.W.3d 589, 593 (Tex. App.--Fort Worth 2001, pet. ref'd). The
trial court's ruling will not be disturbed on appeal if it was within the
"zone of reasonable disagreement." Couchman, 3
S.W.3d at 158. Contrary to rule 609(c)(2), we are constrained to
hold that an abuse of discretion has been shown by admission of the prior
conviction when James had served out her probation.
Our harm analysis for improper admission of evidence as the result of
misapplication of the rules of evidence is whether a "substantial
right" is affected. Tex. R. Evid. 103(a); Tex. R. App. P. 44.2(b). As
previously noted, James's guilt was seriously contested. James consistently
denied knowledge of the presence of the contraband. There was no evidence that
any witness saw her handling the drugs. Furthermore, there was no evidence of
any clues indicating the presence of the drugs in the vehicle such as smell,
spilled powder, an open suitcase, nor any evidence of fingerprints on the
suitcases. The State's case against James consisted of circumstantial evidence
in attempting to establish her knowledge. By allowing the evidence of her prior
conviction, the jury was permitted to hear highly prejudicial evidence that she
had previously been convicted of virtually the same offense for which she was on
trial. As stated by the Fifth Circuit under similar circumstances:

 We can hardly imagine anything more prejudicial to Nero than allowing
 the jury in this armed robbery case to hear . . . that Nero had been convicted
 twice before of burglary and once on drug charges. The jury may well have
 convicted Nero of the charged offense because it was aware of the prior
 convictions.

Nero v. Blackburn, 597 F.2d 991, 994 (5th
Cir. 1979). Moreover, the State more than once referenced the prior conviction
in its closing argument, emphasizing the error, and even attempted to argue,
contrary to the court's earlier ruling, that the conviction showed a prior plan
and scheme as well as being "consistent with her past." We hold that
the improper admission of the prior conviction encouraged the jury to find James
guilty, that the jury may well have based its verdict on that evidence, and that
it had a substantial and injurious effect on the verdict. We sustain James's
sixth point.
CONCLUSION
Because we have sustained James's fifth and sixth points, and it is
unlikely that the remaining issues raised by her seventh, eighth, and ninth
points will arise again on a second trial, it is unnecessary to address those
points concerning prosecutorial misconduct, improper argument, and error in
preventing proper voir dire questioning. We reverse and remand this case for a
new trial.
 
ANNE GARDNER
JUSTICE
PANEL B: HOLMAN, GARDNER, and WALKER, JJ.
PUBLISH
[DELIVERED JANUARY 9, 2003]

1. There was evidence at trial that the amount of cocaine
seized would ultimately have been worth over fifteen million dollars on the
street in Chicago.
2. At the time of James's trial, Patrice Murphy had not
yet been tried.
3. The trial judge stated, "Any of those things y'all
want me to consider, I like having cases on it and maybe a letter [ ] that
outlines what the cases are for [ ] in the next couple or three weeks. . . .
4. Tex. Transp. Code Ann. § 545.104(a) (Vernon 1999)
("An operator shall use the signal authorized . . . to indicate an
intention to turn, change lanes, or start from a parked position.").
5. Tex. Transp. Code Ann. §545.060(a) ("An operator
on a roadway divided into two or more clearly marked lanes for traffic: (1)
shall drive as nearly as practical entirely within a single lane; and (2) may
not move from the lane unless that movement can be made safely.").
6. The court in Cerny relied upon Hernandez
v. State, 983 S.W.2d 867, 871 (Tex. App.--Austin 1998, pet. ref'd) (holding
that a single instance of crossing into another lane by eighteen to twenty-four
inches did not constitute reasonable basis for stop when movement was not shown
to be unsafe or dangerous) and State v. Tarvin, 972 S.W.2d 910, 912
(Tex. App.--Waco 1998, pet. ref'd) (upholding grant of motion to suppress
because of illegality of stop for failure to maintain single lane based on
officer's observation that auto was weaving within lane, absent evidence weaving
was unsafe).
7. The admission of an oral statement that otherwise
complies with the Fifth Amendment of the United States Constitution involves no
constitutional infirmity but is a matter of state statutory law. Butler
v. State, 493 S.W.2d 190, 191 (Tex. Crim. App. 1973); see
Vaughn v. State, 931 S.W.2d 564 , 566 (Tex. Crim. App. 1996).
8. Section 5 states: "
Nothing in this
article precludes the admission of a statement made by the accused in open court
at his trial, before a grand jury, or at an examining trial in compliance with
Articles 16.03 and 16.04 of this code, or of a statement that is
the res gestae of the arrest or of the offense, or of a statement that does not
stem from custodial interrogation, or of a voluntary statement,
whether or not the result of custodial interrogation, that has a bearing upon
the credibility of the accused as a witness, or of any other statement that
may be admissible under law." (Emphasis added). James does not
contend that her oral statement was not voluntarily made.
9. James's counsel preserved error by a bill of exceptions
proving up the content of Murphy's statement to Detective Mordecai.
10. Nevertheless, the trial court may not consider the
credibility of the in-court witness to the statement in determining whether
sufficient corroborating circumstances exist. Cunningham,
877 S.W.2d at 312; Davis, 872 S.W.2d at 749.
11. Agent York did not testify that James
told him she saw any drugs at the house or that the women loaded the suitcases
at that location.
12. See Lilly v. Virginia, 527 U.S.
116, 130, 119 S. Ct. 1887, 1894-95 (1998) (noting statements of third-party
against penal interest offered as exculpatory evidence by defendant are
admissible when circumstances surrounding the statement assure their
reliability); see also Chambers v. Mississippi, 410 U.S.
284, 302-03, 93 S. Ct. 1038, 1049 (1973) (holding the Due Process Clause affords
criminal defendants the right to introduce a third-party's declaration against
penal interest when the circumstances surrounding such a statement furnish
sufficient assurances of reliability).
13. The trial court instructed the jury at the time of
the testimony: "Ladies and gentlemen, the evidence you have just heard from
the witness is to be considered by you for the purpose of determining whether or
not she's telling the truth. It's not to be used to determine whether or not she
had any drugs on the night in question and on the occasion that she's on trial
for." The trial court also submitted a written instruction to the jury
limiting its consideration of the conviction to her credibility and not as to
guilt.