**Benjamin Wayne McCOIN, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 06–00–00105–CR.**

Court of Appeals of Texas, Texarkana.

Submitted Aug. 1, 2001.

Decided Aug. 10, 2001.

---

Jeff Harrelson, Dowd, Harrelson, Moore & Giles, Texarkana, for appellant.

Lisa Tanner, Adrienne Marie McFarland, Asst. Atty. Gen., Austin, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT

Benjamin Wayne McCoin appeals from a jury conviction for attempted capital murder, for which he was sentenced to ninety-nine years' confinement in the Texas Department of Criminal Justice, Institutional Division, and a fine of $6,000.

McCoin contends (1) the trial court erred in allowing him to represent himself because he did not competently, knowingly, and intelligently waive his right to counsel; (2) the trial court erred by not allowing his pro se motions to dismiss to be tried to the jury; (3) his Fourteenth Amendment right to due process of law was violated by lack of access to requested discovery materials and notice of extraneous offenses prior to trial; (4) the trial court erred in denying him the right to cross-examine the State's witness with extrinsic evidence; and (5) the trial court erred in permitting the State to elicit testimony regarding his unrecorded oral statements made while in custody.

### I.  Background

In September 1992, McCoin lived and worked on a ranch in Red River County. Through his work on the ranch, McCoin had access to dynamite, which he used to blow up beaver dams on the ranch. On September 14, 1992, a warrant was issued for McCoin's arrest after he allegedly verbally abused and threatened to kill his ex-wife, Jeanette White. On the evening of September 15, 1992, McCoin learned the police had been to the ranch looking for him. That same evening, shortly after 10:00 p.m., a bomb exploded under the Whites' bedroom, blowing a large hole in their floor and injuring Jeanette White, her husband, Mitchell, and her fourteen-year-old son.[1]

McCoin was indicted by a grand jury in Red River County on October 27, 1994, for

---

1. The explosive device was detonated under the corner of the Whites's bed, tipping it over and knocking both of them nearly out of harm's way. Mitchell White suffered several broken ribs; Jeanette White suffered lesser injuries. The child, McCoin's eldest son, suffered cuts and scrapes and broken glass imbedded in his legs and feet caused by running to his mother's room to determine whether she was injured.

the offense of attempted murder alleged to have occurred on or about September 15, 1992. The record is unclear as to the specifics, but McCoin was apparently then detained in a federal mental health facility for a number of years after his indictment. He was subsequently released into state custody for prosecution. The original indictment was dismissed, and McCoin was re-indicted on October 14, 1999, and charged with the offense of attempted capital murder alleged to have occurred on or about September 15, 1992. The indictment alleged McCoin placed an explosive device under the residence of the Whites and detonated the device.

Craig Henry was appointed to represent McCoin. Three pretrial hearings were conducted, at which standard discovery was ordered by the court and agreed to by the State. Henry filed a notice of insanity defense before trial, but withdrew it on the morning of trial, before voir dire. McCoin filed numerous pro se motions, including motions alleging double jeopardy. He also filed a motion shortly before the trial date seeking to represent himself. On the day of the trial, the trial court took up McCoin's motion for self-representation, granted the motion, and appointed Henry as standby counsel.

## II. Analysis

■■■ McCoin first contends the trial court erred in allowing him to waive counsel and represent himself on grounds that he did not competently, knowingly, and intelligently waive his right to counsel. The Sixth and Fourteenth Amendments to the United States Constitution guarantee that a person brought to trial in any state or federal court shall be afforded the right to assistance of counsel. *Faretta v. California*, 422 U.S. 806, 807, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). By the same authority, federal and state defendants are also possessed of the right to dispense with counsel in favor of self-representation. *Id.*, 422 U.S. at 814, 95 S.Ct. 2525. A defendant's waiver of counsel passes constitutional muster if it is made competently, knowingly and intelligently, and voluntarily. *Id.*, 422 U.S. at 834–36, 95 S.Ct. 2525.

■■ To competently and intelligently invoke the right to self-representation, a defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " *Scarbrough v. State*, 777 S.W.2d 83, 92 (Tex. Crim.App.1989) (citing *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525). Generally, the record must be sufficient for the reviewing court to make an assessment that the appellant knowingly exercised his right to defend himself. *Johnson v. State*, 760 S.W.2d 277, 279 (Tex.Crim.App.1988).

■ The record shows that before allowing McCoin to execute a written waiver of his right to counsel, the court questioned McCoin regarding his age, understanding of the charge against him, knowledge of the permissible punishment range, occupation, education, and prior court experience with criminal trials. The oral examination revealed McCoin had twice before represented himself against criminal prosecutions in jury trials, once obtaining an acquittal. The record further shows McCoin was advised of the imprudence of representing himself, that he would be held to the same standards as an attorney, that he would receive no preferential treatment, that he would be required to comply with the Texas Rules of Evidence, and that he could be at a great disadvantage representing himself. The trial judge further underscored the potential danger of self-representation by appointing standby counsel over McCoin's

protestations. McCoin twice affirmed that he was not coerced into representing himself and that he made the choice freely and voluntarily. On this record, we find that McCoin was adequately admonished regarding the dangers and disadvantages of self-representation.

McCoin also urges mental incompetence in an effort to vitiate any competent waiver of counsel. Mental competence to stand trial falls under a different standard than that posed by the standard for the right of self-representation. *See* TEX.CODE CRIM. PROC. ANN. art. 46.01 (Vernon 1979). McCoin has a constitutional right of self-representation that could only be denied if his waiver of counsel is not competently, knowingly and intelligently, and voluntarily made. This is a matter decided by the trial court.

■ McCoin contends evidence that he created a disturbance at a pretrial hearing and filed numerous rambling pro se pleadings shows that he was incompetent to waive counsel. The record reveals that in one of several appearances before the trial court, McCoin was removed from the courtroom for becoming belligerent and argumentative with the trial judge. According to the record, McCoin rushed toward the bench holding an object, perhaps a pen, in a threatening manner. This outburst does not indicate to this court that McCoin was incompetent to waive counsel. The trial judge was in a position to observe and interview McCoin during all of his various courtroom appearances and deter-

mined that McCoin's behavior did not raise an issue of competence that would prevent him from validly exercising his right to represent himself.

The record also shows the trial court described McCoin as a "prolific letter-writer and pro se motion-filer."[2] These motions are described by the judge as rambling, but raising issues that may need to be addressed. McCoin's lack of inability to draft concise and cohesive motions does not show that he is incompetent to waive counsel.

■ McCoin contends that his filing of a notice of insanity defense bears on this matter. The record shows McCoin's appointed counsel filed a notice of insanity defense and obtained the appointment of Dr. Rafael Otero, a psychologist, as a defense expert.[3] Notice of insanity defense does not alone suggest incompetence to stand trial or waive counsel. Competence is only concerned with a defendant's present ability to comprehend and aid in his defense, whereas an insanity defense is concerned with a defendant's state of mind at the time of the commission of the crime. *See also Rodriguez v. State,* 899 S.W.2d 658, 665–66 (Tex.Crim.App.1995) (noting time-frame distinction between competence and insanity defenses). *Compare* TEX.CODE CRIM. PROC. ANN. art. 46.02 (Vernon 1979 & Supp.2001) (incompetence to stand trial) *with* TEX. PEN.CODE ANN. § 8.01 (Vernon 1994) (insanity). Also significant in this case, counsel withdrew the notice of insanity defense stating the decision was

2. McCoin filed at least two motions with the trial court that were in excess of forty pages. He has also filed numerous pro se motions with this court, despite the fact that he is represented by counsel.

3. McCoin contends the absence of Otero's report from the record constitutes a violation of Article 46.03 of the Texas Code of Criminal Procedure, which governs the insanity de-

fense. Article 46.03 requires the examining psychologist to submit a written report complying with certain enumerated requirements to the ordering court within thirty days of the order of examination. It is not clear from the court's order appointing Otero that Otero was requested to perform an Article 46.03 examination. *See generally* TEX.CODE CRIM. PROC. ANN. art. 46.03 (Vernon 1979).

based on conversations with Otero and instructions from McCoin.

McCoin further contends the record shows he was confined in a mental health facility for a number of years and that this bears on whether he was able to voluntarily and competently waive his right to counsel. The only evidence of record in this regard shows that McCoin had been confined for a number of years in a mental health facility for federal prisoners, but then was ordered discharged and transferred back to state custody.

McCoin cites *Ex parte J.T. Croft,* 429 S.W.2d 905 (Tex.Crim.App.1968), for the proposition that he could not validly waive counsel in the absence of documentary proof that he was adjudged to be sane since he was detained in the federal mental health facility. In *Croft,* the record showed Croft was adjudged insane in the District Court of Coleman County in 1943 and that he was tried and convicted for robbery in 1947 after waiving his right to counsel. The Texas Court of Criminal Appeals vacated Croft's conviction on the ground there was no showing Croft was adjudged to be sane before he was tried and convicted in 1947. There is no showing that McCoin was ever adjudged to be insane as was the case with Croft. While it is true McCoin was previously detained in a federal mental health facility, he was later released into state custody for prosecution.

The following exchange between McCoin's appointed counsel and the trial judge took place on the record as counsel was withdrawing the notice of insanity defense:

> THE COURT: ... [F]rom what I'm hearing you state today, then, there is no question as to the competency of Mr. McCoin?
>
> MR. HENRY: No, sir.

On this record, we find McCoin competently, knowingly, and intelligently waived his right to counsel. McCoin's first point is overruled.

In his second point of error, McCoin contends the trial court erred by not allowing his pro se motions to dismiss, which raised issues of double jeopardy, to be tried to the jury as a special plea under TEX.CODE CRIM. PROC. ANN. arts. 27.05, 27.07 (Vernon 1989). To raise a double jeopardy claim, a defendant must file a verified special plea presenting the issue at the time of trial. TEX.CODE CRIM. PROC. ANN. arts. 27.05, 27.06 (Vernon 1989). The special plea must be submitted and tried to the jury only if the trial court determines the special plea presents a legally sufficient claim. TEX.CODE CRIM. PROC. ANN. art. 27.07; *Apolinar v. State,* 820 S.W.2d 792, 794 (Tex.Crim.App.1991).

Even if we assume McCoin's unverified motions constitute special pleas, McCoin has failed to preserve error. To preserve error relating to the jury charge, there must either be an objection or a requested charge. *Boles v. State,* 598 S.W.2d 274, 278 (Tex.Crim.App. [Panel Op.] 1980). In this instance, he did neither. McCoin did not request a jury charge on double jeopardy, nor did he object to the jury charge on that basis. Nothing has been preserved for our review, and we overrule point of error two. *Id.*

McCoin next contends his Fourteenth Amendment right to due process of law was violated because he was denied access to certain requested discovery materials and he did not receive from the prosecution timely notice of intent to use extraneous offenses. McCoin has waived any argument with regard to the State's alleged untimely notice of intent to use extraneous offenses. He failed to preserve

error by raising the objection below, and he has failed to present argument to this court on how he was harmed by the alleged untimely notice. *See* TEX.R.APP. P. 33.1, 44.2. The "discovery materials" to which McCoin refers are apparently four boxes of materials that had been in McCoin's possession while in federal custody, but that had been forwarded to his court-appointed attorney, Henry, on McCoin's release to state custody. For purposes of our discussion, we shall assume these materials constitute discovery materials.

McCoin filed a pro se motion with the court seeking release to him of the four boxes of materials. Accordingly, in a pretrial hearing on February 7, 2000, the court ordered Henry to allow McCoin's brother to take possession of those boxes for the purpose of turning them over to McCoin at the Red River County Jail.[4] McCoin stated on the record that he understood it was now incumbent on his brother to deliver those materials to him. At the same hearing, the State affirmed to the court that it had complied with all applicable discovery rules and requirements; Henry also affirmed to the trial court that he had provided McCoin with all discovery materials in his possession. Henry further stated that he would refurnish those materials to McCoin in case McCoin had lost them. There is no further complaint in the record—no objection at trial and no motion for new trial—to the effect that McCoin did not receive the requested discovery materials. The record discloses no denial of discovery to McCoin. We overrule his third point of error.

■■■ In his fourth point of error, McCoin contends the trial court erred by denying him the right to cross-examine the State's witness with extrinsic evidence. A defendant's right to cross-examine and impeach a witness with extrinsic evidence is limited by the trial court's discretion to preclude, among other things, confusion of the issues, harassment, endangerment to the witness, needless delay, and the admissibility of highly prejudicial, repetitive, and irrelevant or marginally relevant evidence. *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Carroll v. State,* 916 S.W.2d 494, 498 (Tex. Crim.App.1996); *Love v. State,* 861 S.W.2d 899, 904 n. 9 (Tex.Crim.App.1993); *Hurd v. State,* 725 S.W.2d 249, 252 (Tex.Crim. App.1987). We review the trial judge's decision to exclude the extrinsic evidence on an abuse of discretion standard and disturb the decision only when it falls outside the zone of reasonable disagreement. *Montgomery v. State,* 810 S.W.2d 372, 391–92 (Tex.Crim.App.1990) (op. on reh'g).

■■■ During his cross-examination of Agent Larry Smith, McCoin attempted to impeach Smith with what he presented as a transcript from a federal hearing. Initially the trial court permitted Smith to read from the document McCoin provided to him. But when the prosecutor asked to examine the alleged transcript and saw that it had been tampered with, she brought this to the court's attention and objected to its use. The court examined the document and sustained the objection, stating, "All right, your objection is sustained. That's an illegal document, Mr. McCoin."

The court further stated, outside the presence of the jury:

> Now there are rules of evidence.... We're not going to hand any witness a document that has been altered or manufactured, you know, in any way, fash-

---

4. McCoin would not agree for the materials to be sent through the postal service.

ion, or form, that is not representative of what the document is supposed to be.

The issue that you attempted to raise related to a transcript out of some previous proceeding. There are rules of evidence that apply to that. Where that type—how that document was fastened together or written upon or where it was extracted from, as I say, there is an appropriate way to do it and there is an inappropriate way to do it and in the manner that that was offered is inappropriate. You confer with Mr. Henry about the procedural rules if it's something that you want to look at, and we'll go from there.

The document was introduced as a record exhibit at the request of the State, who further stated for the record that the exhibit was clearly not an official transcript of any official proceeding. The trial judge responded, "And the record will so reflect, as the way it was tendered, it was as if it was an exhibit of an official proceeding." The document in question is a six-page packet. It comprises three reports prepared by various agents and officers of the Bureau of Alcohol, Tobacco, and Firearms and one page purportedly extracted from a transcript of a Rhonda Curry questioning or examining Smith. This latter page is marked with handwritten notes, including profanity. The trial court did not abuse its discretion in disallowing the document, particularly in light of its ordering McCoin to confer with standby counsel regarding proper procedure should he wish to introduce proper impeachment evidence.

Moreover, this documentary evidence was properly excluded under the rule requiring a predicate be laid before further cross-examination concerning a prior inconsistent statement, or introduction of extrinsic evidence thereof. *See* TEX.R. EVID.

613(a). Rule 613(a) requires the witness be told the contents of the prior inconsistent statement, the time and place of the statement, and to whom it was made, and must be afforded an opportunity to explain or deny the statement. *Id.* Only then, according to the rule, is introduction of extrinsic evidence of the prior inconsistent statement proper. *Id.* Here, McCoin cut short the witness's attempt to explain his recollection of the prior inconsistent statement. The State objected on the ground of improper impeachment; the objection was sustained. McCoin failed to lay the proper predicate for introduction of this document. We overrule McCoin's fourth point of error.

■ In his fifth and final point of error, McCoin contends the trial court erred by permitting the State to elicit testimony regarding unrecorded oral statements made by him while in custody. McCoin testified at trial that he was familiar with dynamite and how to use it. He testified that he often used dynamite to blow up beaver dams on the ranch where he worked. He also testified that he did not tell Agent Frankie Hodges he had no access to dynamite and that he never used dynamite to blow up anything.

The State called Hodges during its rebuttal case to testify about an oral statement made by McCoin. Hodges testified that he interviewed McCoin after he read him his *Miranda*[5] rights, gave him his statutory warnings, and McCoin waived those rights and agreed to talk to him. Hodges testified that McCoin told him he never handled dynamite and never had any dynamite in his work truck. Hodges testified that he tape-recorded his conversation with McCoin.

McCoin contends evidence of his statement was inadmissible under Article 38.22

---

**5.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct.     1602, 16 L.Ed.2d 694 (1966).

of the Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN art. 38.22 (Vernon Supp.2001). That article provides no oral statement of an accused made during a custodial interrogation is admissible against the accused in a criminal proceeding unless, among other requirements, a visual recording of the statement is made. TEX.CODE CRIM. PROC. ANN. art. 38.22, § 3 (Vernon Supp.2001). No visual recording of McCoin's statement was made. But, that section will not apply to prevent introduction of a defendant's oral, voluntary statement made while in custody that is introduced for the purpose of impeaching the defendant's trial testimony. TEX.CODE CRIM. PROC. ANN. art. 38.22, § 5 (Vernon 1979); *Lykins v. State,* 784 S.W.2d 32, 35–36 (Tex.Crim.App.1989); *Clark v. State,* 668 S.W.2d 479, 480 (Tex.App.—Texarkana 1984, no pet.). McCoin's statement was only introduced in the State's rebuttal case and was clearly used to impeach his trial testimony. We overrule point of error five.

The judgment is affirmed.