In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00050-CR
______________________________


LONEL HART, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 31195-B


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Lonel Hart appeals from his conviction by a jury for retaliation. Two prior felony
convictions were used as enhancements, and the jury assessed his punishment at fifty-five
years' imprisonment.
Â Â Â Â Â Â Â Â Â Â Lonel raises a single issue on appeal: that the evidence is factually insufficient to
support the verdict. In a factual sufficiency review, we view all the evidence in a neutral
light and determine whether the evidence supporting the verdict is too weak to support the
finding of guilt beyond a reasonable doubt or if evidence contrary to the verdict is strong
enough that the beyond-a-reasonable-doubt-standard could not have been met. Threadgill
v. State, 146 S.W.3d 654 (Tex. Crim. App. 2004), citing Zuniga v. State, 144 S.W.3d 477
(Tex. Crim. App. 2004).
Â Â Â Â Â Â Â Â Â Â Lonel was arrested at the home of Annie Hart, his seventy-seven-year-old aunt. 
The evidence was that he was a regular visitor to the household, that on occasion he was
intoxicated and belligerent, and that Annie often called the police. Police had given Lonel
a trespassing warning in April 2003. He (and everyone else) ignored that warning, and
Lonel continued to visit. It appears that, unless he was intoxicated, he was an acceptable
houseguest. Lonel came to the house again August 2, 2003, and was described as being
intoxicated and loud and obscene, and talking about violence. Annie testified that she
asked him to leave several times and that he refused. She called police, and they took
Lonel to jail.
Â Â Â Â Â Â Â Â Â Â Lonel called Annie from jail, and she testified he was speaking loudly, as he was
wont to do when angry, and said:
You bitch, you think you done something smart calling the damn police and
had me picked up. Bitch, you ain't done nothing smart. I'm going to beat
your ass and have your little kids burnt up in your house. 

The record shows that the telephone conversation was described at different times by
Annie, and the exact language used differed in each description. In the police report,
Annie stated Lonel had said, "You had me arrested, and if I see your mother-fucking ass
again, I'll blow your mother-fucking ass up." Annie also stated she had told a police officer
a day later Lonel had said, "You mother-fuckers think y'all are slick. None of you mother-fuckers are no good. I'm going to get y'all's mother-fucking ass." 
Â Â Â Â Â Â Â Â Â Â Lonel points out he made the telephone call from the jail, that it was dialed by a
jailer, and that the jailer was nearby while he talked to Annie. The jailer testified that, if
abusive language had been used in a loud or a normal speaking voice, he would have
heard itâand that he did not. Telephone records showed that the call was made at
10:52:30 p.m. and that the next call out was made forty-five seconds later. The jailer also
testified that one of his purposes for being there was to keep threats from being made and
that, if he had heard a threat, he would have made a note and reported it. He
acknowledged Lonel could have spoken softly enough for him to be unable to hear him,
and counsel points out this is contrary to Annie's testimony that Lonel was speaking loudly
to her over the telephone.
Â Â Â Â Â Â Â Â Â Â However, the jailer also testified that Lonel was not the only inmate with whom he
was dealing at the time and that he did not know what took place during this particular
telephone call or what Lonel said. The jailer also testified that, after giving the telephone
to the inmate to make the call, he then typically moved to a nearby computer to process
paperwork. There was some testimony about the amount of traffic and noise in the room
(which was occasionally considerable on a Saturday night), but nothing specific to this
particular night or time. 
Â Â Â Â Â Â Â Â Â Â The ultimate point of the jailer's testimony was that he simply did not remember the
incident.
Â Â Â Â Â Â Â Â Â Â Karyl Patterson, an operations clerk for the department, testified Annie telephoned
the office at 10:57 that night and told her that Lonel had threatened her by telephone and
that she thought the call had come from the jail. She testified that Annie sounded excited,
fearful, or scared, and that Annie had recounted the threat to her, which she recorded in
the report as set out above. 
Â Â Â Â Â Â Â Â Â Â Lonel also points out that Annie called the police often for a number of different
reasons. There was testimony that, because she was blind, she was quite aware of her
surroundings and the possibility of danger, and called police often. Her daughter
speculated Annie might have called as many as 200 times over the last three years. 
Â Â Â Â Â Â Â Â Â Â Under the standard articulated in Threadgill and set out above, the evidence shows
that a seventy-seven-year-old woman was threatened by a drunken relative. She used
different words at different times to attempt to reproduce the exact words used by Lonel,
but never wavered in her contention that he had, obscenely and with great directness,
threatened her life. The fact the jailer did not hear the conversation, and should have had
Lonel been yelling or talking loudly, does not eliminate the possibility that Lonel might have
spoken relatively quietly but intensely into the mouthpiece of the telephone. Further, the
volume of his speech is not the critical point. The jailer could not testify that the
conversation recounted by Annie did not happen, only that he did not hear it. Further,
Annie called police and reported the threat less than five minutes after the telephone call
ended. The fact that she calls the police regularly about a number of occurrences that
worry her does not mean that in this instance she was not actually threatened.
Â Â Â Â Â Â Â Â Â Â The evidence in favor of the verdict is not so outweighed by the contrary proof to
sustain a conclusion that the evidence is factually insufficient to support the verdict. The
contention of error is overruled
Â Â Â Â Â Â Â Â Â Â We affirm the judgment. 
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Donald R. Ross
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Date Submitted:Â Â Â Â Â Â November 29, 2004
Date Decided:Â Â Â Â Â Â Â Â Â December 21, 2004

Do Not Publish



Medium List 2 Accent 4"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

 In
The

   Court
of Appeals

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Sixth
Appellate District of Texas at Texarkana

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  No.
06-10-00235-CR

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  IN
RE:

BENJAMIN
WAYNE MCCOIN

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Original
Mandamus Proceeding

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Before
Morriss, C.J., Carter and Moseley, JJ.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Memorandum
Opinion by Chief Justice Morriss

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  








Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  MEMORANDUM
OPINION

Â 

Â Â Â Â Â Â Â Â Â Â Â  Benjamin Wayne McCoin was convicted
of attempted capital murder and was sentenced to ninety-nine yearsÂ
confinement.[1]Â  He files this new petition for writ of
mandamus against ÂTexas, the State of: Lawless!Â and prays that this Court
direct the 102nd Judicial District Court in Red River County to order his
release from jail.Â  Mandamus is an
extraordinary remedy that issues only to correct a clear abuse of discretion or
violation of a duty imposed by law when no other adequate remedy at law is
available.Â  State v. Walker, 679 S.W.2d 484, 485 (Tex. 1984). Â Due to the nature of this remedy, it is McCoinÂs
burden to properly request and show entitlement to the mandamus relief.Â  Barnes
v. State, 832 S.W.2d 424, 426 (Tex. App.ÂHouston [1st Dist.] 1992, orig.
proceeding) (ÂEven a pro se applicant for a writ of mandamus must show himself
entitled to the extraordinary relief he seeks.Â).

Â Â Â Â Â Â Â Â Â Â Â  McCoin first claims that the trial
court did not have jurisdiction over his case and that the StateÂs prosecution
was barred by limitations.Â  No record
demonstrates any lack of jurisdiction, and there is no statute of limitations
for attempted murder.Â  Tex. Code Crim. Proc. Ann. arts. 12.01
(Vernon Supp. 2010), 12.03 (Vernon 2005).Â 
McCoin also seeks release due to Âactual innocent of crime false
perjured claimed by State of Texas,Â Âfalse charge[s],Â violation of the
Interstate Agreement on Detainers Act,[2]
faulty indictment, alleged mental illness of the trial judge, and denial of due
process in the Âwrongful denialÂ of a previous petition for writ of mandamus.Â  These issues are points that are cognizable
on direct appeal, not mandamus.Â  McCoin
points to no ministerial act of the trial court over which we have mandamus
power.Â  McCoinÂs petition refers, at
least in part, to our recent opinion disposing of his earlier petition for writ
of mandamus.Â  In re McCoin, No. 06-10-00139-CR, 2010 WL 3023427, at *1 (Tex.
App.ÂTexarkana Aug. 4, 2010, orig. proceeding) (mem. op.) (not designated for
publication).Â  In the previous petition,
McCoin also complained of a faulty indictment and averred innocence.Â  We will not disturb our August 2010 opinion
denying McCoinÂs request for writ of mandamus without any evidence
demonstrating that the prior decision was erroneous.

Â Â Â Â Â Â Â Â Â Â Â  As in McCoinÂs previous petition,
this petition does not meet the requirements of the Texas Rules of Appellate
Procedure.Â  For example, it does not
include any table of authorities, any appendix or record, any argument with
citation to authorities,[3]
any citation to an appendix or record, or a certification.Â  Tex. R. App. P. 52.3.

Â Â Â Â Â Â Â Â Â Â Â  To be entitled to mandamus relief,
McCoin must show that he has no adequate remedy at law to redress his alleged
harm, and what he seeks to compel is a ministerial act not involving a
discretionary or judicial decision.Â  State ex rel. Young v. Sixth Judicial Dist.
Court of Appeals at Texarkana, 236 S.W.3d 207, 210 (Tex. Crim. App.
2007).Â  Consideration of a motion that is
properly filed and before the court is a ministerial act.Â  State
ex rel. Curry v. Gray, 726 S.W.2d 125, 128 (Tex. Crim. App. 1987).Â  A relator must establish that the trial court
(1) had a legal duty to rule on the motion; (2) was asked to rule on the
motion; and (3) failed to do so.Â  In re Keeter, 134 S.W.3d 250, 252 (Tex.
App.ÂWaco 2003, orig. proceeding); In re
Villarreal, 96 S.W.3d 708, 710 (Tex. App.ÂAmarillo 2003, orig. proceeding)
(relator must show that trial court received, was aware of, and was asked to
rule on motion).Â  No record, or averment,
supports any such showing.

Â Â Â Â Â Â Â Â Â Â Â  Absent a showing the trial court is
aware of and has been asked to rule on any request, and because of the
deficiencies noted above, McCoin has not established his entitlement to the
extraordinary relief of a writ of mandamus.Â 
Accordingly, we deny McCoinÂs petition for writ of mandamus.

Â 

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Josh
R. Morriss, III

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Chief
Justice

Â 

Date
Submitted:Â Â Â Â Â Â Â Â Â  January 3, 2011Â Â Â Â Â Â Â Â Â Â  

Date
Decided:Â Â Â Â Â Â Â Â Â Â Â Â  January 4, 2011

Â 

Do Not
Publish

Â 

Â 

Â 











[1]In
McCoinÂs direct appeal, this Court affirmed his conviction in 2001.Â  McCoin
v. State, 56 S.W.3d 609 (Tex. App.ÂTexarkana 2001, no pet.).

Â 





[2]Interstate
Agreement on Detainers Act, 18 U.S.C.A., App. 2, Â§ 2 (West, Westlaw current
through 2010).





[3]The
one case cited in McCoinÂs petition, Johnson
v. State, 900 S.W.2d 475 (Tex. App.ÂBeaumont 1995), affÂd, 930 S.W.2d 589 (Tex. Crim. App. 1996), offered to support
McCoinÂs conclusory statement that the Interstate Agreement on Detainers Act
was violated in this case, instead stands for the opposite, that such Act was
not applicable.Â  The only other cite in
McCoinÂs petition, 26 U.S.C. Â§Â 5861(d),
simply defines unlawful receipt or possession of an unregistered firearm and,
thus, provides no authority supporting McCoinÂs petition.