**Opinion filed July 18, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00356-CR

_____

### SUNNY J. HIGNOJOS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 70th District Court**

**Ector County, Texas**

**Trial Court Cause No. A-37,164**

## MEMORANDUM OPINION

The jury found Sunny J. Hignojos, Appellant, guilty of the murder of Jaime Morales Jr. and assessed his punishment at confinement for forty years. The trial court sentenced him in accordance with the verdict of the jury.[1] We affirm.

---

[1]Appellant was sentenced to serve his punishment in two related cases consecutively to his punishment in this case. In Cause No. A-37,159 in the 70th District Court of Ector County, Texas, Appellant was convicted of attempted capital murder and evading arrest or detention, and on appeal in this court, Cause No. 11-12-00158-CR, we have this day affirmed the trial court's judgment. In Cause No. A-37,160 also in the 70th District Court of Ector County, Texas, Appellant was convicted of aggravated assault with a deadly weapon, and on appeal in this court, Cause No. 11-12-00358-CR, we have this day affirmed the trial court's judgment.

Appellant complains that the trial court did not hold an Article 38.22[2] hearing on the voluntariness of his post-arrest statements to law enforcement officers and that the trial court erred in admitting those statements during Appellant's cross examination and through officers' testimony in rebuttal. Because the issues are interrelated, we will discuss them together.

## I. *The Evidence at Trial*

Although Appellant does not challenge the sufficiency of the evidence, we provide the following factual recitation for context in reviewing Appellant's issues. Becky Wakefield lived at a trailer on West 26th Street in Odessa with Jaime Morales Jr.; Roger Mundy III; and Raymond Arthur Modisett Jr., the owner of the trailer. Wakefield and her friends—Eddie Palma, Samuel Ortiz, and Natalio Ortiz—left one party late one evening to go drink at Modisett's trailer. Tony Lujan, Amy Cardona, Trini Dominguez, and Ramon Mancha as well as Modisett, Morales, and Mundy were at the trailer when Wakefield and her friends arrived. A short time later, Palma and Lujan argued over gang "colors"; Palma was a "blood," and Lujan was a "crip." Wakefield asked Lujan to leave, and he did. Palma called Rafael Alvarez Jr., known as "C.J.," and Appellant to come and get him.

When Alvarez and Appellant showed up, Appellant had a shotgun with him, and Alvarez had a .25 caliber pistol. A pit bull named Snowflake bit Appellant as he came up to the trailer. Appellant threatened to shoot Snowflake, and Wakefield argued with Appellant about those threats. Morales came out of the trailer and told Appellant not to shoot Snowflake.

Morales and Alvarez began to argue, and Alvarez tried to "pistol whip" Morales. As they fought, they fell down, and Morales was on top of Alvarez. Modisett, Cardona, and Samuel Ortiz testified that Appellant then shot Morales in the back. Samuel Ortiz, Wakefield, and Mancha testified that Appellant also shot

[2]TEX. CODE CRIM. PROC. ANN. art. 38.22 (West 2005).

2

Snowflake and also shot each one of them. Mundy said that he heard shots, came out of the trailer, and saw Morales on the ground when Appellant shot at him. Morales died a short time later from the gunshot wound to his back. After the shootings, Appellant, Alvarez, and Palma fled in Appellant's Dodge Ram pickup.

Deputy David Escudero was taking a criminal mischief report about a block away from West 26th Street when he heard gunshots. Deputy Escudero saw a Dodge Ram pickup leaving the area, and he pursued it. He stopped the pickup on 16th Street. Deputy Escudero ordered the driver, Appellant, to turn off the pickup and get out of it, but Appellant did neither. Instead, Appellant drove away at a high rate of speed, and Deputy Escudero pursued him at speeds between 90 and 110 miles per hour. Deputy Escudero said that the backseat passenger shot at him through the recently opened, sliding rear window of the pickup and that he returned fire. A short time later, the pickup hit a telephone pole guy wire, flipped over on its side, and crashed. Appellant and Palma got out of the pickup and ran away. Another passenger, Alvarez was injured in the wreck and was pinned in the right front passenger seat.

Hunter Lewis, a trooper with the Texas Department of Public Safety, responded to the crash site and assisted in searching for Appellant and Palma. Trooper Lewis located Appellant in a field a short distance from the wrecked pickup and arrested him. Investigator Diallo Bass completed an investigation and spoke to several witnesses. Although Modisett initially said that Palma was the one who shot Morales, all of the witnesses, including Modisett, eventually identified Appellant as the one who shot Morales. Investigators retrieved Appellant's clothing from him, a shotgun from his pickup, spent shotgun shells near the trailer, and pistol casings near the trailer; they found more shells and casings in Appellant's pickup. Spent shotgun shells, a pistol, and a spent pistol

casing also were found along the pursuit route. The recovered shells and casings matched Appellant's shotgun and Alvarez's pistol.

Appellant[3] denied shooting anyone and claimed that Palma, whom he said he only knew as E.P., was the shooter.[4] While in custody, Appellant made post-arrest statements to Trooper Lewis, Sergeant Steven McNeil, and Investigators Bass and Jones. Those statements were inconsistent with Appellant's trial testimony. Appellant asserted that his post-arrest custodial statements were not voluntary because he was not read his *Miranda*[5] warnings. Appellant admitted that he had been given his *Miranda* warnings, but he claimed that he had not received the following warnings from Trooper Lewis:

1. "right to remain silent";

2. "right to an attorney [to be present during questioning]";

3. "right to have an attorney appointed for you if you cannot afford one"; and

4. "anything you say can and will be used against you in a court of law."

Appellant also said he received no warnings from anyone else. Trooper Lewis testified that he gave Appellant his *Miranda* warnings upon arrest, and Sergeant McNeil testified that he heard others also give Appellant his *Miranda* warnings again when Appellant was near Sergeant McNeil's patrol vehicle. Investigator Jones also read Appellant his *Miranda* warnings at the detention center. Appellant voluntarily spoke to all four officers but denied doing so.

---

[3]Appellant was advised by defense counsel and admonished by the court about taking the stand and waiving his Fifth Amendment rights; Appellant, nonetheless, chose to testify.

[4]Palma was incarcerated and did not testify.

[5]*Miranda v. Arizona*, 384 U.S. 436 (1966).

## II. *Issues Presented*

In his first issue, Appellant claims that the trial court erred when it did not hold a hearing and find that the statements he made to Trooper Lewis were involuntary and inadmissible. In Appellant's second and third issues, he asserts that the trial court made similar errors when it admitted statements that Appellant made to Investigators Bass and Jones and to Sergeant McNeil.

## III. *Discussion and Analysis*

Appellant argues that his unrecorded, post-arrest statements made to four law enforcement officers were inadmissible under Article 38.22 of the Texas Code of Criminal Procedure because they were not voluntary and because he did not receive his *Miranda* warnings before he made the statements. The State argues that Appellant received his *Miranda* warnings multiple times and that Appellant's statements were not introduced in its case-in-chief, but were used for the impeachment of Appellant and were voluntary. The State also argues that Appellant waived his voluntariness complaint and that, even if the trial court erred, any error was harmless.

We use a harm analysis to review a proper Article 38.22 complaint. *Davidson v. State*, 25 S.W.3d 183, 187 n.4 (Tex. Crim. App. 2000). We review, under an abuse of discretion standard, Appellant's assertion that the trial court erred when it admitted the statements that he made to Trooper Lewis, Investigators Bass and Jones, and Sergeant McNeil as well as their testimony about his statements. *Montgomery v. State*, 810 S.W.2d 372, 378 (Tex. Crim. App. 1990). We defer to the trial court's factual determinations when the credibility and demeanor of the witnesses are at issue. *Guzman v. State*, 955 S.W.2d 85, 91 (Tex. Crim. App. 1997). A trial court abuses its discretion when it admits or excludes evidence if its decision lies outside of the zone of reasonable disagreement.

*Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996). We turn our attention first to Article 38.22.

Section 3(a) of Article 38.22 provides that oral statements of an accused garnered during custodial interrogation are inadmissible against the accused in a criminal proceeding unless several requirements are met. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a) (West 2005). Article 38.22, section 3(a) states:

> (a) No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless:
>
> (1) an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement;
>
> (2) prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning;
>
> (3) the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate and has not been altered;
>
> (4) all voices on the recording are identified; and
>
> (5) not later than the 20th day before the date of the proceeding, the attorney representing the defendant is provided with a true, complete, and accurate copy of all recordings of the defendant made under this article.

When Article 38.22, section 3(a) was first enacted, it included a prohibition on unrecorded custodial statements being used for impeachment, but statutory changes in 1981 did not contain that prohibition; Article 38.22, section 5, however, remained unchanged. Article 38.22, section 5 allows for admission of a voluntary statement that bears on the accused's credibility. *Giron v. State*, 695 S.W.2d 292,

294 (Tex. App.—Houston [1st Dist.] 1985, no pet.); *Robinson v. State*, 681 S.W.2d 288, 289 (Tex. App.—San Antonio 1984, pet. ref'd).

Section 5 of Article 38.22 contains the following provision:

> Nothing in this article precludes the admission of a statement made by the accused in open court at his trial, . . . of a voluntary statement, whether or not the result of custodial interrogation, that has a bearing upon the credibility of the accused as a witness.

Article 38.22, section 3(a) is not applicable to oral statements, even those made post-arrest, when used to impeach an accused's inconsistent statements. *Lykins v. State*, 784 S.W.2d 32, 35–36 (Tex. Crim. App. 1989); *McCoin v. State*, 56 S.W.3d 609, 616–17 (Tex. App.—Texarkana 2001, no pet.); *Giron*, 695 S.W.2d at 294; *Robinson*, 681 S.W.2d at 289; and *Clark v. State*, 668 S.W.2d 479, 480 (Tex. App.—Texarkana 1984, no pet.).

In *Lykins*, the Court of Criminal Appeals stated:

> Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process. Had inconsistent statements been made by the accused to some third person, it could hardly be contended that the conflict could not be laid before the jury by way of cross-examination and impeachment.

*Lykins*, 784 S.W.2d at 36. Appellant took the stand on his own volition, despite the warnings provided by the court and after conferring with his own counsel. Appellant then denied that he made any statements to any officer, denied telling Trooper Lewis about a third passenger having a shotgun and pistol, and denied saying anything to Investigators Bass and Jones. The State was entitled to, and did, challenge the veracity of those statements.

7

The State questioned Appellant about what he said to Trooper Lewis in response to the question about where he was sitting in his pickup and who was with him. Appellant denied that he originally told Trooper Lewis that he was in the backseat but, later, volunteered to Trooper Lewis that he was the driver. Appellant also denied telling Trooper Lewis that the third passenger had a shotgun and pistol; Trooper Lewis testified that Appellant volunteered that information as well as the name of the injured passenger. On further cross-examination, the State highlighted Appellant's conflicting statements about knowing Palma. Appellant did not describe Palma to Trooper Lewis, and he denied describing him to Sergeant McNeil. Sergeant McNeil testified that Appellant volunteered the injured passenger's name and also told him that the third passenger was a young Hispanic who fired at Deputy Escudero and then fled the crash scene.

Appellant denied saying anything to Investigators Bass and Jones at the detention center. The State called both of them as witnesses after Appellant testified. The State called them as witnesses to impeach Appellant's testimony. Investigators Bass and Jones testified that Appellant said he picked up "E.P." off the street. "E.P." had a shotgun and pistol with him. After they drove around Odessa, E.P. directed him to the trailer where E.P. exited the pickup with the shotgun, shells, a cell phone, and the keys to the pickup. Appellant said that he remained in his pickup, heard shots, and drove off after E.P. got back into the pickup. Investigators Bass and Jones also testified that Appellant told them that he was stopped by Deputy Escudero; that he fled at E.P.'s command; and that, after the crash, he turned himself in. All of this testimony was in response to Appellant's testimony that he said nothing in response to any questions by Investigators Bass and Jones.

The trial court did not abuse its discretion when it allowed the cross-examination of Appellant and the officers' rebuttal testimony to impeach Appellant

with his prior inconsistent statements. The State had the right to impeach Appellant's testimony with his prior inconsistent statements and marshal evidence that bore on his credibility. Because Appellant's post-arrest custodial statements affected his credibility following his inconsistent testimony, Section 3(a) of Article 38.22 is not applicable, and we need not address the hearing issue. We overrule all three of Appellant's issues.

## IV. *This Court's Ruling*

We affirm the judgment of the trial court.

TERRY McCALL

JUSTICE

July 18, 2013

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.